**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT**

**CASE NO. 1:13-cv-20300-CMM**

VERANDA DICKENS, individually and
As Personal Representative of the ESTATE
OF JACOBY DICKENS,

*Plaintiffs,*

v.

CASTLE KEY INSURANCE COMPANY,

*Defendant.*
_______________________________________/

**PLAINTIFF'S VERIFIED AND PARTIALLY UNOPPOSED MOTION FOR ATTORNEY'S FEES AND MEMORANDUM OF LAW**

Plaintiff, Veranda Dickens, individually and as Personal Representative of the Estate of Jacoby Dickens, pursuant to Fed. R. Civ. P. 54(d), S.D. Fla. L.R. 7.3, and Fla. Stat. § 627.428 moves this Court for entry of an Order requiring Castle Key Insurance Company to pay attorney's fees in the amount of $389,408.83, plus prejudgment interest thereon, for a total award of $441,701.93. Castle Key does not dispute Mrs. Dickens' entitlement to fees, but does dispute the amount of fees. Mrs. Dickens has paid her attorneys the fees sought in this motion and is out-of-pocket for more than $400,000 in fees and costs. She therefore requests that the Court require Castle Key to reimburse her for all of these fees, as they would not have been incurred but for Castle Key's wrongful denial of her insurance claim.

## I. PROCEDURAL HISTORY

On January 28, 2013, Mrs. Dickens filed the instant breach of contract dispute against her homeowners' insurer, Castle Key Insurance Company, following Castle Key's April 3, 2012 denial of her claim for water damage. *See* Complaint [D.E. 1]. In her Complaint (and the

subsequent amended Complaints) Mrs. Dickens asserted entitlement to attorney's fees pursuant to Fla. Stat. § 627.428 and prejudgment interest should she prevail. *Id.* The jury trial in this matter, held from January 12, 2015 through January 16, 2015, resulted in a verdict in favor of Mrs. Dickens and against Castle Key. The Court entered judgment in Mrs. Dickens' favor on January 28, 2015. *See* D.E. 105. Mrs. Dickens complied with the procedure set forth in S.D. Fla. L.R. 7.3 and attempted to reach an agreement with Castle Key regarding the amount of fees to which she is entitled, but the parties could not agree. Castle Key does not oppose Mrs. Dickens' entitlement to fees. This motion followed.

## II. CALCULATION OF ATTORNEY'S FEES

### *A. Determination Of The Lodestar*

In determining the amount of attorney's fees to be awarded, this Court must apply the substantive law of Florida construing Fla. Stat. § 627.428.[1] *Zunde v. Int'l Paper Co.*, No.

[1] Mrs. Dickens' entitlement to attorney's fees is based on this statute. In a diversity case such as this, "a party's right to attorney's fees is determined by reference to state law." *Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, Inc.*, 270 Fed. Appx. 962, 963 (11th Cir. 2008); *Kearney v. Auto-Owners Ins. Co.*, 2010 WL 1949633 at *2 (M.D. Fla. 2010); *FIGA v. R.V.M.P. Corp.*, 681 F.Supp. 806, 807 (S.D. Fla. 1988). Pursuant to Florida Statute § 627.428, an insured is entitled to recover his attorney's fees when he prevails against his insurer in an action under a policy issued for delivery in the State of Florida. The Statute provides:

> 627.428 Attorney's fee –
>
> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat. § 627.428.

3:98CV439-J-20B, 2000 WL 1763843, *1 (M.D. Fla. July 20, 2000); *FIGA v. R.V.M.P. Corp.*, 681 F. Supp. 806, 807 (S.D. Fla. 1988).

Florida has adopted the federal lodestar approach as the starting point in calculating an award of attorney's fees. *Bell v. U.S.B. Acquisition Co., Inc.*, 734 So. 2d 403, 406-407 (Fla. 1999) (discussing *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985)). The *Rowe* Court held that the criteria set forth in Rule 4-1.5(b) of the Rules Regulating the Florida Bar should be utilized in determining reasonable attorney's fees. *Rowe*, 472 So. 2d at 1150. The *Rowe* court continued: "[t]he first step in the lodestar process requires the court to determine the number of hours reasonably expended on the litigation." *Id.* The court should then determine, by examining the factors laid out in Rule 4-1.5(b), a reasonable hourly rate for each attorney claiming a fee, then multiply the rate by the hours each attorney reasonably spent in the litigation, the final aggregate of which is the lodestar amount. *Id.* at 1151.

To aid the Court in determining the hours reasonably expended in this litigation, Mrs. Dickens' counsel is providing copies of the detailed and contemporaneous time records for this matter, including redactions for attorney-client privilege. Time records for Mrs. Dickens' counsel describing the tasks described by each individual billing entry are attached hereto and are broken down by billing lawyer and/or para-professional. *See R.V.M.P. Corp.* at 808 (holding that the Florida Supreme Court requires the moving party to submit accurate time records).

---

Mrs. Dickens clearly prevailed against Castle Key by obtaining a jury verdict finding that Castle Key wrongly denied coverage for her homeowners' claim. Accordingly, she is entitled to recover her reasonable attorney's fees.

***B. Reasonable Hourly Rates***

The starting point in any determination of the value of an attorney's services is to multiply the hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Norman*, 836 F.2d at 1299. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. *Norman* at 1299; *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 143 F.R.D. 277, 282 (M.D. Fla. 1992). Mrs. Dickens retained two law firms to assist her with the denial of her insurance claim: Rutecki & Associates, P.A., and Ver Ploeg & Lumpkin, P.A.

Heather A. Rutecki is the founder, shareholder, and managing attorney of Rutecki & Associates, P.A ("R&A"), a Miami-based law firm. Ms. Rutecki became involved with the Dickens' insurance claims shortly after the first water loss in December 2011, and was retained by Mrs. Dickens to provide legal services on an hourly basis. Mrs. Dickens paid R&A's hourly fees throughout the pendency of this claim and lawsuit. Ms. Rutecki was admitted to practice in Florida in 1995.[2] Ms. Rutecki is a general litigator with a specialty in real estate transactions and

[2] R&A also utilized the following legal professionals, all admitted to practice in Florida:
Senior attorney Linda Koenigsberg, admitted to practice in 1976, conducted research and drafted memoranda;
Associate attorney Morgan Theodore, admitted to practice in 2009, conducted research and drafted memoranda;
Associate attorney Daniel Feight, II, admitted to practice in 2012, conducted research and drafted memoranda;
Senior attorney/Of Counsel Nadine Goodman, admitted to practice in 1992, conducted research;
Associate attorney Jeremey Krienes, admitted to practice in 2012, conducted research and drafted memoranda;
Paralegal Jessica Palmer conducted research and managed documents.

litigation, among others. Ms. Rutecki also served as an attorney for the Dickens for approximately ten years related to their condominium at Fisher Island. In March 2012, Ms. Rutecki enlisted the services of insurance specialists at Ver Ploeg & Lumpkin, P.A. to assist with the insurance issues involved in this matter. Ms. Rutecki was involved throughout the lawsuit and assisted with strategic decisions and revising motions and other court submissions. She actively participated in trial preparation, pretrial hearings, and trial where she conducted the direct examination of Mrs. Dickens' expert, John Petreikis. Ms. Rutecki's hourly rate over the course of this matter was $275 per hour, and $375 per hour for court appearances. Mrs. Dickens paid those rates. The hours claimed by R&A are as follows, and supporting bills are attached hereto as Exhibit A[3]:

| Timekeeper | Time | Rate | Amount |
|---|---|---|---|
| Rutecki, Heather A. | 551 hrs, 20 min | $275 | $124,121.25 |
| Rutecki, Heather A. (court appearances) | 64 hrs | $375 | $17,600.00 |
| Koenigsberg, Linda | 10 hrs, 27 min | $275 | $2,873.75 |
| Theodore, Morgan | 7 hrs, 5 min | $275 | $8,547.92 |
| Feight, Daniel | 5 hrs, 42 min | $110 | $1,567.50 |
| Goodman, Nadine | 6 hrs, 55 min | $275 | $1,902.08 |
| Kreines, Jeremy | 22 hrs, 15 min | $225 | $6,118.75 |
| Palmer, Jessica | 3 hrs, 25 min | $110 | $939.58 |
| **TOTAL:** | **671 hrs, 9 min** | | **$163,670.83** |

Ver Ploeg & Lumpkin, P.A. ("VPL") is a Miami-based law firm that specializes almost exclusively in insurance disputes. Mrs. Dickens retained VPL to provide legal services on an hourly basis, and Mrs. Dickens paid those hourly fees throughout the pendency of her claim and lawsuit.

[3] R&A's time records contain redactions for legal services provided to Mrs. Dickens that are unrelated to the lawsuit. Such redactions are accompanied by information identifying the amount of time expended that was reasonably incurred in advancing the Dickens' claim. Additional redactions to protect the attorney-client privilege are also present. The undersigned will provide unredacted records to the Court upon request.

Attorney Pincavage is a partner at VPL who was admitted to the Florida Bar in September 2005. She has nine and a half years of litigation experience, centered primarily on insurance disputes, and has served as trial counsel in seven other insurance coverage and insurance bad faith trials. She was recognized as a Florida SuperLawyers "Rising Star" in 2014. She spends 100 percent of her professional time litigating insurance coverage and bad faith cases. Since VPL's retention, Attorney Pincavage has been involved in all aspects of the case as a decision-maker and strategist, and served as lead counsel at trial. Attorney Pincavage drafted motions and written discovery, conducted legal research, defended and took depositions, prepared witnesses, and attended hearings and mediations. At trial, Attorney Pincavage performed the opening and closing, voir dire of the jury, and conducted the examination of all witnesses except Mrs. Dickens' experts, and Castle Key expert Scott Cluxton. Attorney Pincavage's hourly rate during the course of this matter has ranged from $300 per hour to $375 per hour. Mrs. Dickens paid these rates.

Attorney Dobuler is a fourth-year associate attorney at VPL who was admitted to the Florida Bar in 2011 and who has been employed with VPL since beginning his legal practice. During his time in practice, Mr. Dobuler has exclusively focused on the litigation of insurance disputes in both state and federal courts, and has handled numerous first-party property coverage matters in addition to the Dickens' matter. Attorney Dobuler has served as trial counsel in one prior property insurance jury trial. In 2013, Attorney Dobuler was appointed to a state-wide task force convened by Florida's Insurance Commissioner designed to develop standards for consumer protection in the Florida property insurance market. Attorney Dobuler became involved in this matter in mid-2014 to provide additional support as trial approached, and assisted in the preparation for trial in this matter, drafted a number of substantive pre-trial

motions, and was an active participant during the trial. He conducted the cross-examination of Castle Key's expert, Scott Cluxton, the direct examination of Mrs. Dickens' expert, Joshua Krinsky, and argued Mrs. Dickens' motion for directed verdict. Mr. Dobuler's hourly rate during the course of this litigation ranged from $235 per hour to $250 per hour. Mrs. Dickens paid these rates.

Attorney Meiler is a fifth-year associate at VPL who was admitted to practice in Florida in September 2010. Attorney Meiler worked as a public defender in Miami, Florida for four years before joining VPL in November 2014. Her role was limited to conducting research during the pendency on the trial regarding evidentiary issues. Her hourly rate is $260 per hour, and Mrs. Dickens paid this rate.

Senior Paralegal Linda M. Mulhall has thirty-one years of experience in the legal field. Ms. Mulhall was a law librarian for eleven years prior to becoming a Florida registered paralegal. She has been a paralegal for twenty years, and worked at Murai Wald Biondo & Moreno before joining Ver Ploeg & Lumpkin, P.A. as a senior paralegal in 2005. Ms. Mulhall reviewed the majority of all filings and discovery, and was responsible for the management of all documents in this lawsuit. She was primarily responsible for all document management and assisted with all discovery issues, issuance of subpoenas, and coordinating trial preparation. Ms. Mulhall also attended trial and provided litigation support. Ms. Mulhall's hourly rate during the course of this matter has ranged from $195 per hour to $215 per hour. Mrs. Dickens paid these rates.

The hours claimed by VPL, together with hourly rates, are as follows. Supporting documentation of VPL's time is attached hereto as Exhibit B.[4] Documentation supporting Mrs. Dickens' payment of VPL's fees is attached hereto as Exhibit C.

| Timekeeper | Year | Hours | Rate | Amount |
|---|---|---|---|---|
| Pincavage, Danya J. | 2012 | 39.60 | 300.00 | $11,880.00 |
| | 2013 | 94.80 | 315.00 | $29,862.00 |
| | 2014 | 194.40 | 350.00 | $68,040.00 |
| | 2015 | 119.80 | 375.00 | $44,925.00 |
| Dobuler, Dale S. | 2014 | 74.70 | 235.00 | $17,554.50 |
| | 2015 | 96.60 | 250.00 | $24,150.00 |
| Mulhall, Linda M. | 2012 | 0.70 | 195.00 | $136.50 |
| | 2013 | 15.40 | 205.00 | $3,157.00 |
| | 2014 | 38.70 | 215.00 | $8,320.50 |
| | 2015 | 76.70 | 215.00 | $16,490.50 |
| Meiler,Michal | 2015 | 4.70 | 260.00 | $1,222.00 |
| **Total fees** | | **756.10** | **hrs.** | **$225,738.00** |

The hourly rates charged by VPL and R&A are reasonable. A reasonable rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The rates charged by these firms are consistent with the rates normally charged to other clients under similar circumstances. Further, Mrs. Dickens actually paid both firms at these hourly rates. The rates are also comparable with rates for legal services in Miami, Florida, taking into consideration the attorneys' respective levels of skill and expertise. *See CBS Broadcasting, Inc. v. Browning,* 2007 WL 2850527 at *7 (S.D. Fla. 2007) (finding reasonable hourly rates in Miami market as follows: $550.00 for a partner in practice for 30 years; $525.00 for a partner in practice for 27 years; $375.00 for a seventh-year associate; and $350.00 for a fourth-year associate); *CC-Aventura, Inc. v. Weitz Co.,*

[4] VPL's time records contain redactions to protect the attorney-client privilege and the work

*LLC*, 2008 WL 276057 at *2 (S.D. Fla. 2008) (finding reasonable hourly rates as follows: $400.00 for an eighth-year associate; $200.00 for a first-year associate); *Parrot, Inc. v. Nicestuff Distributing Int'l, Inc.*, 2010 WL 68094, at *12 (S.D. Fla. 2010) (finding reasonable hourly rates as follows: $475.00-$500.00 for a partner in practice for 20 years; $310.00 for a fifth-year associate; $250.00 for a third-year associate; and $160.00-$205.00 for a paralegal).

***C. The Hours Reasonably Expended***

The next step in the computation of the lodestar is ascertaining reasonable hours. *Norman,* 836 F.2d at 1301. Excessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* The verification in support of this Motion attests that the raw time records were reviewed and improper time was removed. In making these deletions, Mrs. Dickens erred on the side of caution, even though she may well have successfully argued that some or all of this time should have been retained under the analysis set forth in *R.V.M.P. Corp.*, 681 F.Supp. at 809. (Court awarded fees relating to time expended in connection with voluntarily dismissed counterclaims, as the investigation of these claims enabled the defendant to discover "evidence that would help him in the breach of contract claim"). Mrs. Dickens submits that the hours expended in this litigation and the fees charged by her counsel are reasonable given the nature of the case and the level of skill and experience of her counsel. VPL removed 256.7 hours from its time; R&A removed 268 hours and 38 minutes of its time. The remaining time was reasonably incurred in resolving this insurance dispute.

This lawsuit included the resolution of a policy exclusion that had not been addressed by courts applying Florida law. In addition, there were numerous depositions and trial witnesses, a total of four expert witnesses, and intricate factual issues regarding the timing and cause of the

---

product immunity. The undersigned will provide unredacted records to the Court upon request.

water loss. Although the parties cooperated regarding the handling of this lawsuit, there was no agreement regarding the application of the policy to the Dickens' loss. This matter resolved *via* a four and a half day trial and judgment was entered exactly two years after this suit was filed. It was also reasonable for Mrs. Dickens to retain two law firms, given the nature of her long-standing attorney-client relationship with Ms. Rutecki, and the need for specialized insurance counsel. Ms. Rutecki added her knowledge of the factual issues in this lawsuit and made strategic decisions in conjunction with Ms. Pincavage.

Mrs. Dickens acknowledges that some of the attorney's fees she incurred were for tasks performed in 2012, prior to suit being filed. But where the pre-suit work is necessitated by the insurer's conduct, the fees are recoverable pursuant to Fla. Stat. § 627.428. *U.S. Fidelity and Guar. Co. v. Rosado*, 606 So. 2d 628, 629 (Fla. 3d DCA 1992); *Storfer v. Guarantee Trust Life Ins. Co.*, 2011 WL 213461 at *4 (S.D.Fla.2011) (unpub. dec.) (same); *Wendel v. USAA Casualty Ins. Co.*, 2009 WL 1971451 at *3 (M.D. Fla. 2009) (unpub. dec.) (the preclusion of necessary pre-suit fees would defeat the statute's goal of placing the insured in the place it would have been if the insurer had seasonably paid the claim without causing the insured to retain counsel); *Rynd v. Nationwide Mut. Fire Ins. Co.*, No. 8:09-CV-1556-T-27TGW, 2012 WL 939387, at *7 (M.D. Fla. Jan. 25, 2012) report and recommendation adopted, No. 8:09-CV-1556-T-27TGW, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012). Castle Key's denial of Mrs. Dickens' claim clearly necessitated VPL and R&A's work in this instance, and those fees should be awarded. VPL and R&A asked Castle Key to reconsider its claim decision, and represented Mrs. Dickens at the Florida residential property mediation in the summer of 2012. The presuit efforts at resolving the dispute were unsuccessful, and Mrs. Dickens filed suit in January 2013.

The total number of hours expended in this case is 1,427 hours and 15 minutes, and the total fees incurred equal $389,408.83. Accordingly, the time records accurately reflect the time that was reasonably expended in order to adequately represent Mrs. Dickens' interests in this matter. Mrs. Dickens therefore requests that this Court determine the lodestar amount to be $389,408.83

### *D. The Results Achieved*

Mrs. Dickens prevailed against Castle Key after a four and a half day jury trial. Mrs. Dickens' counsel, therefore, achieved a successful result for their client. Mrs. Dickens' counsel efficiently staffed this case from its inception. Attorney Pincavage (at the time an associate) handled the gross majority of discovery and motion practice without the involvement of additional attorneys at her firm. Attorney Dobuler became involved in the matter only when trial approached. Ms. Rutecki, as Mrs. Dickens' original counsel, was well-versed in the history of the claim and provided important strategic assistance throughout the pendency of this suit. The amount of time spent litigating this matter is not excessive and was efficiently performed. In addition, because Mrs. Dickens had hourly fee arrangements with her counsel, she has paid all of their legal fees out-of-pocket. Mrs. Dickens' legal fees are the largest component of the damages she has sustained as a result of Castle Key's denial of coverage, and the Court should therefore award $389,408.83 in attorney's fees to Mrs. Dickens.

## III. THE COURT SHOULD AWARD PREJUDGMENT INTEREST ON MRS. DICKENS' ATTORNEY'S FEES

The Florida Supreme Court has acknowledged that prejudgment interest on attorney's fees is properly awardable. *Quality Engineered Installation, Inc. v. Higley S., Inc.*, 670 So. 2d 929, 930-31 (Fla. 1996); *see also Jablonski v. St. Paul Fire & Marine Ins. Co.*, 645 F. Supp. 2d 1101, 1102 (M.D. Fla. 2009) (prejudgment interest on any award of attorney's fees should be

considered in conjunction with such an award.). Mrs. Dickens paid her attorneys on an hourly basis, and is therefore out-of-pocket for the fees she has incurred.

In diversity cases such as this, federal courts follow state law governing the award of prejudgment interest. *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007). Under Florida law, when the damages are liquidated "on a plaintiff's out-of-pocket pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest from the date of that loss." *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 526 F. Supp. 2d 1251, 1261 (S.D. Fla. 2007) (quoting *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)).

The Florida Supreme Court has recognized that the purpose of a prejudgment interest award is to compensate the plaintiff for the loss, rather than to penalize the defendant. *Argonaut Ins. Co.*, 474 So. 2d at 214-15. As such, the "plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefore." *Id.* The only way to make Mrs. Dickens whole is to award her full attorney's fees, with prejudgment interest thereon.

### *A. Prejudgment Interest Is Awarded to Insureds in Property Damage Cases*

Mrs. Dickens asserted in this breach of contract lawsuit that Castle Key wrongly denied coverage for her February 21, 2012 claim. Mrs. Dickens contends that on April 3, 2012, instead of denying coverage for her claim, Castle Key should have agreed to pay it.[5]

The Eleventh Circuit has awarded prejudgment interest to an insured in a property insurance lawsuit to determine coverage. *Columbia Cas. Co. v. S. Flapjacks, Inc.*, 868 F.2d 1217, 1219 (11th Cir. 1989). The *Columbia* Court noted that under Florida's loss theory, "interest begins to run from the time of the wrongful deprivation; neither the merit of a defense nor the

[5] The parties have reached an agreement on prejudgment interest on the amount of the judgment.

certainty of the loss's amount affects the interest award." *Id.* (citing *Argonaut* at 215). Under this theory, "the finder of fact merely quantifies the damage and determines a party's liability for such damages. Regardless of the date on which the finder of fact decides these issues, Florida law entitles such individual to prejudgment interest from the date of the loss." *Id.*

Florida courts have equated the date of the loss with the date that "the proceeds would have been due under the policy." *Columbia* at 1219 (citing *Biscayne Supermarket, Inc. v. Travelers Ins. Co.*, 485 So. 2d 861 (Fla. 4th DCA 1986); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Gelfand*, 477 So. 2d 28, 29 (Fla. 2d DCA 1985)). Florida courts "have relied on the particular policy's language to determine when an insurer became obligated to pay the proceeds." *Id.* at 1219-1220 (citing *Warren v. Old Dominion Ins. Co.*, 465 So. 2d 1376 (Fla. 5th DCA 1985)(court calculated prejudgment interest beginning thirty days after insureds submitted proof of loss, where the policy provided for payment within thirty days after presentation of proof of loss); *Berkshire Mutual Ins. Co. v. Moffett*, 378 F.2d 1007 (5th Cir. 1967)(court calculated prejudgment interest beginning sixty days after insured filed proof of loss because the policy required insurer to pay claims sixty days after proof of loss).

The Castle Key policy provides that "Within 90 days after we receive notice of a claim under Coverage A – Building Property Protection … from you, we shall pay or deny such claim or a portion of the claim unless the failure to pay such claim or a portion of the claim is caused by factors beyond our control which reasonably prevents such payment. Claims will be paid within 20 days of written agreement between you and us." *See* Policy, "How We Pay For A Loss" [D.E. 1-3, p. 19]. Castle Key denied coverage for Mrs. Dickens' claim on April 3, 2012. *See* April 3, 2012 Letter [D.E. 36-18]. Because the jury determined that Castle Key should have

provided coverage for Mrs. Dickens' claim, the Court should award prejudgment interest beginning on the day Castle Key denied coverage.

### *B. Prejudgment Interest Should Be Calculated Using Florida's Statutory Interest Rate*

Mrs. Dickens is entitled to prejudgment interest calculated at the Florida interest rate because the state-mandated interest rate applies in diversity cases. *McDermott v. Middle East Carpet Co.*, 811 F.2d 1422, 1429 (11th Cir. 1987) (citing *Royster Co. v. Union Carbide Corp.*, 737 F.2d 941, 948 (11th Cir. 1984)).

The Florida statutory rate of prejudgment interest is determined by the Legislature and set forth in Fla. Stat. §§ 687.01 and 55.03. The interest was calculated as follows. Castle Key should have paid Mrs. Dickens' claim on April 3, 2012. The statutory interest rate during the entire pendency of Mrs. Dickens' claim and lawsuit was 4.75 percent. The interest on VPL's fees in 2012 was $8,015.84; in 2013 the interest was $10,756.55; in 2014 the interest was $10,756.55; and in 2015 the interest was $825.16. The total prejudgment interest from April 3, 2012 through January 28, 2015 on VPL's fees $30,354.10. The interest on R&A's fees in 2012 is $5,793.60; in 2013 it is $7,774.50; in 2014 it is $7,774.50; and in 2015 it is $596.40, for a total of $21,939.00. Mrs. Dickens therefore seeks a total fee judgment against Castle Key in the amount of $441,701.93. Mrs. Dickens therefore requests that the Court enter an Order awarding her attorney's fees and enter an Amended Final Judgment to include attorney's fees and prejudgment interest thereon in the amount of $441,701.93.

## IV. CONCLUSION

Mrs. Dickens respectfully requests that this Court enter an Order determining that she is entitled to a lodestar amount of $389,408.83, plus prejudgment interest, for a total of

$441,701.93 to bear interest at the federal rate from the date of rendition of the order or supplemental judgment, and any further relief that this Court deems equitable and proper.

**VERIFICATION**

Before me, the undersigned authority, personally appeared Danya J. Pincavage who, being duly sworn, deposes and states that she has read the foregoing motion and the factual representations contained therein are true and correct.

**Danya J. Pincavage**

Sworn to and subscribed before me this 27th day of March ______, 2015, by Danya J. Pincavage, who is personally known to me.

ANNEL SANCHEZ
Notary Public - State of Florida
Commission #EE 166209
My Commission Expires
February 2, 2016

(Signature of Notary)

(Name of Notary Typed, Printed or Stamped)

**CERTIFICATION OF GOOD FAITH EFFORT TO CONFER**

Pursuant to Local Rule 7.1.A.3 and 7.3, the undersigned counsel certifies that she has conferred with opposing counsel, Brian C. Hunter, in a good faith effort to resolve the issues raised in this Motion, and is authorized to represent that Castle Key does not oppose Mrs. Dickens' entitlement to attorney's fees, but does oppose the amount of fees sought by Mrs. Dickens.

Respectfully submitted,

VER PLOEG & LUMPKIN, P.A.
100 S.E. 2nd Street, 30th Floor
Miami, FL 33131
(305) 577-3996
(305) 577-3998 facsimile

*/s/ Danya J. Pincavage*
**Brenton N. Ver Ploeg**
bverploeg@vpl-law.com
Florida Bar No. 171470
**Danya J. Pincavage**
Fla. Bar No. 0014616
dpincavage@vpl-law.com
**Dale S. Dobuler**
Florida Bar No. 93403
ddobuler@vpl-law.com

**Heather J. Rutecki**
Florida Bar No. 49190
hrutecki@ruteckiandassociates.com
RUTECKI AND ASSOCIATES, P.A.
100 S.E. 2nd Street, Suite 2950
Miami, FL 33131
(305) 423-4999
(305) 423-4998 facsimile

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

**I hereby certify** that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on this 27th day of March, 2015 on all counsel of record on the Service List below.

*/s/ Danya J. Pincavage*
**Danya J. Pincavage**

**SERVICE LIST**

**Brenton N. Ver Ploeg**
bverploeg@vpl-law.com
**Danya J. Pincavage**
dpincavage@vpl-law.com
**Dale S. Dobuler**
ddbuler@vpl-law.com
VER PLOEG & LUMPKIN, P.A.
100 S.E. 2nd Street, 30th Floor
Miami, FL 33131
(305) 577-3996
(305) 577-3998 *facsimile*

**Heather J. Rutecki**
hrutecki@ruteckiandassociates.com
RUTECKI AND ASSOCIATES, P.A.
100 S.E. 2nd Street, Suite 2950
Miami, FL 33131
(305) 423-4999
(305) 423-4998 facsimile

*Attorneys for Plaintiff*

**Brian Charlton Hunter, Esq.**
bhunter@chl-law.com
**Daniel T. Doyle, Esq.**
ddoyle@chl-law.com
Chimpoulis, Hunter & Lynn, P.A.
7901 S.W. 36 Street
Suite 206
Davie, Florida 33328
(954) 463-0033
(954) 463-9562 *facsimile*

*Attorneys for Defendant*